**No. 25-11043**

# In the United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee,*

v.

TIMOTHY BARTON,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-cv-02118-X

**APPELLANT'S OPENING BRIEF**

Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

# CERTIFICATE OF INTERESTED PERSONS

**NO. 25-11043**

SECURITIES AND EXCHANGE COMMISSION
*Plaintiff-Appellee,*
*v.*
*TIMOTHY BARTON,*
*Defendant-Appellant*

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. 126 Villita LLC, receivership entity
2. 2999 Acquisitions, LLC (Delaware), entity subject to preliminary injunction
3. 2999 Middlebury, LLC (Delaware), entity subject to preliminary injunction
4. 2999 Roxbury, LLC (Delaware), entity subject to preliminary injunction

5. 2999TC Acquisitions, LLC, receivership entity
6. 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC, entity subject to preliminary injunction
7. 2999TC Founders, LLC (Delaware), entity subject to preliminary injunction
8. 2999TC JMJ CMGR, LLC (Delaware), receivership entity
9. 2999TC JMJ Equity, LLC, entity subject to preliminary injunction
10. 2999TC JMJ MGR, LLC (Delaware), entity subject to preliminary injunction
11. 2999TC JMJ, LLC (Delaware), entity subject to preliminary injunction
12. 2999TC JMJ, LLC (Texas), entity subject to preliminary injunction
13. 2999TC LP, LLC (Delaware), entity subject to preliminary injunction
14. 2999TC MM, LLC, entity subject to preliminary injunction
15. 2999TC MZ, LLC (Delaware), entity subject to preliminary injunction

16. 3820 Illinois, LLC, interested party
17. Ackerman LLP, counsel for interested parties DLP Real Estate Capital, Inc, DLP Winter Haven Ventures, LLC, Marine Creek Ventures, LLC, and Orchard Farms Ventures, LLC
18. Adam and Reese LLP, counsel for interested party Bank of America, N.A.
19. Aledo TX, LLC, receivership entity
20. AVEG WW, LLC (Delaware), entity subject to preliminary injunction
21. AVG West, LLC, receivership entity
22. Badgley, Serena, interested party
23. Bank of America, N.A., interested party
24. Barton, Maximilien, interested party
25. Barton, Timothy, defendant-appellant
26. Barton Texas Water District, LLC, entity subject to preliminary injunction
27. Barton Water District, LLC (Delaware), entity subject to preliminary injunction

28. Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
29. BEE2019, LLC, receivership entity
30. Berger, Jeffrey A., counsel for plaintiff-appellee Securities and Exchange Commission
31. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission
32. BC Acquisitions, LLC (Delaware), entity subject to preliminary injunction
33. Bird, Douglas S., counsel for interested party City of Frisco, Texas
34. BM318 LLC, receivership entity
35. Broadview Holdings Trust, receivership entity
36. Brown Fox PLLC, counsel for receiver Cortney C. Thomas
37. BSJ Trading, LLC, entity subject to preliminary injunction
38. Buchholz, Robert W., counsel for interested party Southern Star Capital, LLC
39. BUILD VIOLET, LLC, entity subject to preliminary injunction

40. Butler Snow LLP, counsel for interested party Louisiana National Bank
41. Cain & Skarnulis PLLC, counsel for interested party Serena Badgley
42. Capps, Aaron T., counsel for interested party Circle H Contractors LP
43. Capps and Associates PLLC, counsel for interested party Circle H Contractors LP
44. Carnegie Development, LLC, defendant and receivership entity
45. Carnegie Finance, LLC, entity subject to preliminary injunction
46. Carrillo, C. Alan, counsel for receiver Cortney C. Thomas
47. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia
48. Chandler Law PC, counsel for interested party Dhiraj Ramolia
49. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia
50. Chapple, Ryan E., counsel for interested party Serena Badgley
51. Cheves, P. Kyle, counsel for interested party McCormick 101, LLC

52. Circle H Contractors LP, interested party

53. City of Frisco, Texas, interested party

54. Clem, David M., counsel for interested party Truist Bank

55. Condo Towers GP, LLC, entity subject to preliminary injunction

56. Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

57. Crow, Daniel, interested party

58. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

59. CYNKFP, LLC, entity subject to preliminary injunction

60. D4AT, LLC, entity subject to preliminary injunction

61. D4AVEG, LLC, entity subject to preliminary injunction

62. D4BM, LLC, entity subject to preliminary injunction

63. D4BR, LLC (Texas), entity subject to preliminary injunction

64. D4DS LLC, receivership entity

65. D4FR LLC, receivership entity

66. D4IN, LLC (Texas), receivership entity

67. D4KL LLC, receivership entity

68. D4MC, LLC (Texas), receivership entity

69. D4OP, LLC, receivership entity

70. D4OPM, LLC, entity subject to preliminary injunction

71. D4SMC, LLC, entity subject to preliminary injunction

72. D4WP, LLC, entity subject to preliminary injunction

73. Dallas Real Estate Investors, LLC, entity subject to preliminary injunction

74. Dallas Real Estate Lenders, LLC (Delaware), entity subject to preliminary injunction

75. Dallas Real Estate Management, LLC, entity subject to preliminary injunction

76. Dentons US LLP, counsel for interested party McCormick 101, LLC

77. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

78. DJD Land Partners, LLC, relief defendant and receivership entity

79. DLP Real Estate Capital, Inc., interested party

80. DLP Winter Haven Ventures, LLC, interested party

81. Edney, Michael J., counsel for defendant-appellant Timothy Barton

82. Enoch Investments LLC, receivership entity

83. FHC Acquisition LLC, receivership entity

84. Finnell, Jeffrey B., counsel for plaintiff-appellee Securities and Exchange Commission

85. First Development Company of Ohio, LLC, interested party

86. Five Star GM, LLC (Delaware), entity subject to preliminary injunction

87. Five Star MM, LLC (Delaware), entity subject to preliminary injunction

88. Five Star MM, LLC (Texas), entity subject to preliminary injunction

89. Five Star TC, LLC (Delaware), entity subject to preliminary injunction

90. Food & Leverage Real Estate, LLC (Delaware), entity subject to preliminary injunction

91. Fu, Haoqiang, defendant

92. Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC
93. Gillespie Villas LLC, receivership entity
94. Gitlin, Jonathan, counsel for interested party First Development Company of Ohio
95. Glenwood (18340) Property, LLC (Delaware), entity subject to preliminary injunction
96. Goldmark Hospitality LLC, receivership entity
97. Green, Gordon W., counsel for interested party Truist Bank
98. Hale, Hon. Harlin, mediator
99. Hamilton, Dennis S., counsel for interested party McCormick 101, LLC
100. Heiskell, Michael P., counsel for defendant Stephen T. Wall
101. Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC
102. Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission
103. HNGH Turtle Creek, LLC, interested party
104. Hopper, James F., counsel for receiver Cortney C. Thomas

105. HR Sterling, LLC, receivership entity

106. Hunter, Renee M., counsel for intervenor United States of America

107. Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

108. Illuminate Dallas, LLC (Texas), entity subject to preliminary injunction

109. JB Special Asset, LLC, entity subject to preliminary injunction

110. JMJ Acquisitions LLC, receivership entity

111. JMJ Acquisitions Mgmt, LLC, entity subject to preliminary injunction

112. JMJ Aviation, LLC (Texas), entity subject to preliminary injunction

113. JMJ BLUES TX, LLC, entity subject to preliminary injunction

114. JMJ Blues, LLC, entity subject to preliminary injunction

115. JMJ Centre, LLC, entity subject to preliminary injunction

116. JMJ Development Brasil, LTDA, entity subject to preliminary injunction

117. JMJ Development Fund, entity subject to preliminary injunction

118. JMJ Development Fund, Inc, entity subject to preliminary injunction

119. JMJ Development LLC, receivership entity

120. JMJ EB5 Fund GP, LLC (Delaware), entity subject to preliminary injunction

121. JMJ EB5 Fund, LP (Delaware), entity subject to preliminary injunction

122. JMJ Holdings, LLC, entity subject to preliminary injunction

123. JMJ Holdings US, LLC, entity subject to preliminary injunction

124. JMJ Holdings USA, Inc, entity subject to preliminary injunction

125. JMJ Home Building Inc (Nevada), entity subject to preliminary injunction

126. JMJ Hospitality General Trading FZE, entity subject to preliminary injunction

127. JMJ Hospitality, LLC, receivership entity

128. JMJ Hospitality UAE, entity subject to preliminary injunction

129. JMJ Investments Limited, entity subject to preliminary injunction

130. JMJ Land Acquisition, Inc (Nevada), entity subject to preliminary injunction
131. JMJ Land Development, Inc (Nevada), entity subject to preliminary injunction
132. JMJ Land Venture, LLC, entity subject to preliminary injunction
133. JMJ Mezzanine, Inc (Nevada), entity subject to preliminary injunction
134. JMJ MF Development, LLC, entity subject to preliminary injunction
135. JMJ Multifamily, Inc (Nevada), entity subject to preliminary injunction
136. JMJ Offshore, LTD, entity subject to preliminary injunction
137. JMJ Regional Center, LLC (Delaware), entity subject to preliminary injunction
138. JMJ Residential, LLC, entity subject to preliminary injunction
139. JMJ Valley Center, LLC, entity subject to preliminary injunction
140. JMJ VC Management, LLC, receivership entity
141. JMJAV, LLC, receivership entity
142. JMJ148, LLC (Texas), entity subject to preliminary injunction

143. JMJD4, LLC, entity subject to preliminary injunction

144. JMJD4, LLC (Delaware), receivership entity

145. JMJD4Allensville, LLC, entity subject to preliminary injunction

146. JMJDWG, LLC (Texas), entity subject to preliminary injunction

147. JMJKH, LLC, entity subject to preliminary injunction

148. JMR100 LLC, receivership entity

149. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

150. Johnston, Kenneth C., counsel for interested party Truist Bank

151. Johnston Clem Giffod PLLC, counsel for interested party Truist Bank

152. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

153. Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

154. Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

155. Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC
156. Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC
157. Koonce, Charlene C., counsel for receiver Cortney C. Thomas
158. LaJolla Construction Management LLC, receivership entity
159. LC Aledo TX, LLC, receivership entity
160. LDG001, LLC, relief defendant and receivership entity
161. Lesser, Joshua A., counsel for interested party Bank of America, N.A.
162. Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
163. Louisiana National Bank, interested party
164. Lumar Land & Cattle, LLC, interested party
165. Lynco Ventures, LLC, receivership entity
166. Lynn Investments, LLC, entity subject to preliminary injunction

167. Mansion Apartment Homes at Marine Creek, LLC, receivership entity
168. Marine Creek SP, LLC, receivership entity
169. Marine Creek Ventures, LLC, interested party
170. McCormick 101, LLC, interested party
171. MCFW, LLC, entity subject to preliminary injunction
172. MCRS2019, LLC (Texas), entity subject to preliminary injunction
173. MF Container, LLC (Delaware), entity subject to preliminary injunction
174. MFO Venus Development, LLC, interested party
175. Middlebury Trust, entity subject to preliminary injunction
176. MMCYN, LLC, entity subject to preliminary injunction
177. MO 2999TC, LLC, receivership entity
178. Moeller, Evan A., counsel for interested party Bank of America, N.A.
179. Moss & Associates, LLC, interested party
180. Munsch Hardt Kopf & Harr, P.C., counsel for interested party The Dixon Water Foundation
181. MV9490 Land Lot, LLC, entity subject to preliminary injunction

182. MV9490 Management, LLC, entity subject to preliminary injunction

183. MV9490, LLC, entity subject to preliminary injunction

184. MXBA, LLC, entity subject to preliminary injunction

185. MXBA Managed, LLC, entity subject to preliminary injunction

186. MXBA Services, LLC, entity subject to preliminary injunction

187. Napoli, Michael D., counsel for interested parties DLP Real Estate Capital, Inc, DLP Winter Haven Ventures, LLC, Marine Creek Ventures, LLC, and Orchard Farms Ventures, LLC

188. Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

189. Nicholson, Jill L., counsel for interested party McCormick 101, LLC

190. Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

191. Northstar 114, LLC (Delaware), entity subject to preliminary injunction

192. Northstar PM, LLC (Delaware), receivership entity

193. Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
194. O'Connell, Sean B., counsel for defendant-appellant Timothy Barton
195. One Agent Texas, LLC (Texas), entity subject to preliminary injunction
196. One Agent, LLC (Delaware), entity subject to preliminary injunction
197. ONE FHC, LLC (Texas), entity subject to preliminary injunction
198. One MF Residential, LLC, entity subject to preliminary injunction
199. One MFD4, LLC, entity subject to preliminary injunction
200. One Pass Investments, LLC (Delaware), entity subject to preliminary injunction
201. One RL Trust, entity subject to preliminary injunction
202. One SF Residential, LLC, entity subject to preliminary injunction

203. Orchard Farms Ventures, LLC, interested party
204. Orchard Farms Village LLC, receivership entity
205. Palisades-TC, LLC, interested party
206. Patton, Jonathan R., counsel for interested party Palisades-TC, LLC
207. Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC
208. Perry, Deborah M., counsel for interested party The Dixon Water Foundation
209. Pioneer Finance, Inc., interested party
210. Polsinelli PC, counsel for interested party McCormick 101, LLC
211. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
212. Ramolia, Dhiraj, interested party
213. Ranis, Ethan J., counsel for interested party City of Frisco, Texas
214. Residential MF Assets, LLC (Delaware), entity subject to preliminary injunction

215. Rhino Stainless US, LLC, entity subject to preliminary injunction
216. Ridgeview Addition, LLC (Texas), receivership entity
217. Riverwalk Invesco, LLC (Delaware), entity subject to preliminary injunction
218. Riverwalk Opportunity Management, LLC (Delaware), entity subject to preliminary injunction
219. Riverwalk OZFM, LLC (Delaware), entity subject to preliminary injunction
220. Riverwalk OZFV, LLC (Delaware), entity subject to preliminary injunction
221. Riverwalk QOZBJ, LLC (Delaware), entity subject to preliminary injunction
222. Riverwalk QOZBM, LLC (Delaware), entity subject to preliminary injunction
223. Riverwalk QOZBV, LLC (Delaware), entity subject to preliminary injunction
224. Roossien, Jr., Dennis L., counsel for interested party The Dixon Water Foundation

225. Ross, Smith & Binford, PC, counsel for interested party First Development Company of Ohio

226. Scott, John B., counsel for interested party Pioneer Finance, Inc.

227. Scott & Scott, PLLC, counsel for interested party Pioneer Finance, Inc.

228. Scheff & Stone, L.L.P., counsel for interested party interested party Texas Republic Bank, N.A.

229. Schurr, Patrick J., counsel for interested party interested party Texas Republic Bank, N.A.

230. Seagoville Farms, LLC, receivership entity

231. Securities and Exchange Commission, plaintiff-appellee

232. SF Rock Creek, LLC, receivership entity

233. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

234. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

235. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

236. SK Carnegie, LLC, entity subject to preliminary injunction

237. Slim, Jules P., counsel for defendant-appellant Timothy Barton

238. Somerset-Lost Creek Golf, Ltd., interested party
239. Southern Properties Capital, Ltd., interested party
240. Southern Star Capital, LLC, interested party
241. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC
242. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC
243. Starr, Hon. Brantley, U.S. District Court Judge (N.D. Tex.)
244. Sosland, Martin A., counsel for interested party Louisiana National Bank
245. STL Park, LLC (Delaware), entity subject to preliminary injunction
246. Tamamoi, LLC, interested party
247. Tarm Carnegie Management, LLC (Delaware), entity subject to preliminary injunction
248. Tarm Carnegie, LLC (Texas), entity subject to preliminary injunction
249. Taylor, Clay M., counsel for interested party McCormick 101, LLC

250. TC Hall, LLC, receivership entity

251. Texas Republic Bank, N.A., interested party

252. The Dixon Water Foundation, interested party

253. The MXBA Trust, entity subject to preliminary injunction

254. The Timothy L. Barton Irrevocable Life Insurance, entity subject to preliminary injunction

255. The Towers Condominium Partners Ltd, entity subject to preliminary injunction

256. Thomas, Cortney C., receiver

257. Tillotson, Jeffrey M., counsel for interested party Palisades-TC, LLC

258. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

259. Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity

260. TLB 2012 IRR Trust, entity subject to preliminary injunction

261. TLB 2018 Trust, entity subject to preliminary injunction

262. TLB 2019 Trust, entity subject to preliminary injunction

263. TLB 2020 Trust, entity subject to preliminary injunction

264. TRTX Properties LLC, entity subject to preliminary injunction

265. Truist Bank, interested party

266. TRWF LODGE, LLC, entity subject to preliminary injunction

267. TRWF, LLC, entity subject to preliminary injunction

268. United States of America, intervenor

269. Venus59 LLC, receivership entity

270. VenusBK195, LLC (Texas), entity subject to preliminary injunction

271. VenusPark201, LLC (Delaware), entity subject to preliminary injunction

272. Vertical Street Ventures, LLC, interested party

273. Villita Development, LLC, receivership entity

274. Villita Towers LLC, receivership entity

275. Wall, Stephen T., defendant

276. Wall007, LLC, defendant and receivership entity

277. Wall009, LLC, defendant and receivership entity

278. Wall010, LLC, defendant and receivership entity

279. Wall011, LLC, defendant and receivership entity

280. Wall012, LLC, defendant and receivership entity

281. Wall016, LLC, defendant and receivership entity
282. Wall017, LLC, defendant and receivership entity
283. Wall018, LLC, defendant and receivership entity
284. Wall019, LLC, defendant and receivership entity
285. Wells, Tim, counsel for receiver Cortney C. Thomas
286. Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC
287. Winstead PC, counsel for interested party Vertical Street Ventures, LLC; and
288. WRL2019, LLC (Texas), receivership entity.

The undersigned counsel certifies that the above list includes all persons, associations of persons, firms, partnerships, or corporations that have a financial interest in the outcome of this appeal as required by Fifth Circuit Rule 28.2.1.

/s/ *Timothy L. Barton*
Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

Date: January 13, 2026

# Table of Contents

CERTIFICATE OF INTERESTED PERSONS ....................................... ii

TABLE OF CONTENTS ....................................................... xxvi

TABLE OF AUTHORITIES ..................................................... xxix

STATEMENT OF THE ISSUES ................................................. 3

STANDARD OF REVIEW ...................................................... 4

STATEMENT OF THE CASE .................................................. 5

**A. The Underlying SEC Enforcement Action** ................................ 5

**B. The Wall Entities Filed Bankruptcy Before the Receivership** ............... 6

**C. The Receivership Order and Litigation Stay** ........................... 7

**D. The U.S. Trustee's Motion and Three Years of Continuances** ............... 8

**E. The Receiver's Motion to Lift Stay** .................................. 10

**F. The District Court's July 28, 2025 Order** ............................. 10

ARGUMENT ................................................................ 15

**I. THE DISTRICT COURT LACKED AUTHORITY TO LIFT THE STAY BECAUSE THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION** .......... 15

**A. 28 U.S.C. § 1334(e) Vests Exclusive Jurisdiction in the Bankruptcy Court** .......... 15

**B. The Wall Entities Were in Bankruptcy Before the SEC Filed Suit** .......... 17

**C. A Receivership Cannot Supersede Bankruptcy Jurisdiction** .......... 18

**II. LIFTING THE STAY SERVES NO LEGITIMATE PURPOSE AND CAUSES IRREPARABLE HARM** .......... 21

**A. There Is No Requirement That the Bankruptcy Cases Be Dismissed** .......... 21

**B. Creditors Remain Unpaid and Their Claims Unsatisfied** 23

**C. Debtors and Creditors Are Entitled to Relief in Bankruptcy Court When the Receivership Concludes** .......... 24

**D. The Stay Causes No Harm to Any Party** .......... 25

**III. THE RECEIVER'S MOTION WAS MOTIVATED BY SELF INTEREST, NOT LEGITIMATE RECEIVERSHIP PURPOSES** 27

**A. The Receiver Sought to Generate Fees Where No Work Is Required** .......... 27

**B. The Receiver Has a Structural Conflict of Interest** .......... 29

**IV. THE ORDER VIOLATES DUE PROCESS BY EXTINGUISHING CREDITOR AND DEBTOR RIGHTS WITHOUT MEANINGFUL PROCESS** .......... 31

**A. Creditors Have Vested Rights Under the Bankruptcy Code** .......... 31

**B. The Order Eliminates Statutory Protections Without Due Process** .......... 32

**C. Even if Constitutional Issues Are Not Reached, Reversal Is Required** .......... 34

**V. THE PROPER REMEDY IS TO MAINTAIN THE STATUS QUO PENDING RESOLUTION OF THE RECEIVERSHIP** .......... 35

# TABLE OF AUTHORITIES

## Cases

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949) ...... 2

Gibson v. Berryhill, 411 U.S. 564, 578-79 (1973) .................................... 28

In re MCorp Financial, Inc., 137 B.R. 219 (Bankr. S.D. Tex. 1992) ...... 15

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ...................................... 31

*Netsphere, 703 F.3d at 313* ....................................................................... 27

Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012) .......................... 18

Netsphere, Inc. v. Baron, 703 F.3d 296, 313 (5th Cir. 2012) .................. 12

SEC v. Barton, 135 F.4th 206 (5th Cir. 2025) .......................................... 4

SEC v. Byers, 609 F.3d 87 (2d Cir. 2010) ................................................ 15

SEC v. Byers, 609 F.3d 87, 92 (2d Cir. 2010) .......................................... 11

Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998) ................ 14

Steel Co., 523 U.S. at 94 ........................................................................... 16

Tumey v. Ohio, 273 U.S. 510, 523 (1927) ................................................ 28

## Statutes

11 U.S.C. § 1107 ......................................................................................... 6

11 U.S.C. § 1112(b) ..................................................................................... 7

11 U.S.C. § 1112(b)(4) ................................................................................. 20

11 U.S.C. § 1141........................................23

11 U.S.C. § 362(a)........................................6

11 U.S.C. § 362(a)(3)........................................16

11 U.S.C. § 507........................................12

11 U.S.C. § 541........................................6

11 U.S.C. §§ 1106-1107........................................23

28 U.S.C. § 1292(a)(1)........................................1

28 U.S.C. § 1292(a)(2)........................................1

28 U.S.C. § 1334(e)........................................3

28 U.S.C. § 1334(e)(1)........................................14

**Rules**

Fed. R. App. P. 4(a)(1)(A).........................................31

# JURISDICTIONAL STATEMENT

This appeal arises from the district court's July 28, 2025 order in SEC v. Barton, Civil Action No. 3:22-cv-02118-X, which: (1) lifted the litigation stay contained in the receivership order, and (2) authorized the receiver to return to bankruptcy court to seek dismissal of ten jointly administered Chapter 11 cases. ROA.19227-28.

Appellate jurisdiction exists under multiple independent bases:

**First,** 28 U.S.C. § 1292(a)(1) provides jurisdiction because the order modifies an existing injunction embedded in the receivership order by lifting a stay and authorizing litigation that materially changes the parties' rights.

**Second,** 28 U.S.C. § 1292(a)(2) provides jurisdiction because the order decides consequential steps toward winding up the receivership and reallocates authority between the bankruptcy and receivership forums.

**Third,** the collateral-order doctrine provides jurisdiction because the order conclusively determines the federal forum—bankruptcy or

receivership—in which estate administration will occur, and the loss of the bankruptcy forum is effectively unreviewable after final judgment. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949).

The notice of appeal was timely filed on September 9, 2025. ROA.19373-74. See Fed. R. App. P. 4(a)(1)(A).

This appeal presents a distinct and independently appealable injury. The July 28, 2025 order constitutes: (1) a new order materially different from prior receivership orders; (2) a new directive authorizing action against bankruptcy estates; (3) a new injury to creditors and debtors whose bankruptcy rights will be extinguished; and (4) a new basis for appellate jurisdiction independent of any prior appeal. Prior mandates addressing the receivership generally did not adjudicate the bankruptcy court's exclusive jurisdiction under § 1334(e), and cannot authorize orders entered without subject-matter jurisdiction.

## STATEMENT OF THE ISSUES

**1.** Whether the district court erred by lifting the litigation stay to permit the receiver to seek dismissal of bankruptcy cases over which the bankruptcy court has exclusive jurisdiction under 28 U.S.C. § 1334(e).

**2.** Whether the order should be reversed because lifting the stay serves no legitimate purpose, causes irreparable harm to creditors whose claims remain unsatisfied, and was unnecessary given that the bankruptcy cases can remain stayed pending resolution of the receivership.

**3.** Whether the receiver's motion to lift the stay was motivated by impermissible self-interest in generating additional fees rather than any legitimate receivership purpose.

**4.** Whether the order violates due process by extinguishing creditors' and debtors' vested rights under the Bankruptcy Code without meaningful opportunity to be heard on the merits of dismissal.

# STANDARD OF REVIEW

The issues presented require de novo review:

**Jurisdiction:** Whether the district court had authority to direct outcomes in cases under the bankruptcy court's exclusive jurisdiction is reviewed de novo. Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998).

**Legal Authority:** Whether the receivership can supersede bankruptcy jurisdiction under 28 U.S.C. § 1334(e) is a question of law reviewed de novo. SEC v. Byers, 609 F.3d 87 (2d Cir. 2010).

**Constitutional Claims:** Due process challenges are reviewed de novo. Mathews v. Eldridge, 424 U.S. 319 (1976).

Abuse-of-discretion review is inapplicable where, as here, the district court lacked subject-matter jurisdiction to enter the challenged order.

# STATEMENT OF THE CASE

## A. The Underlying SEC Enforcement Action

On September 23, 2022, the Securities and Exchange Commission filed a civil enforcement action in the Northern District of Texas against Timothy Barton and various entities, alleging violations of the antifraud provisions of the Securities Act and the Exchange Act. The complaint named eleven entities as defendants or relief defendants, including nine Wall LLC entities (Wall007, LLC through Wall019, LLC), Carnegie Development, LLC, and two relief defendants. ROA. 80-108.

The SEC's allegations centered on loans from Chinese nationals that were used for real estate development projects in Texas. The SEC alleged these loans constituted unregistered securities and that misrepresentations were made to the lenders. Appellant contests both the characterization of these commercial loans as securities and the substance of the fraud allegations, matters that are the subject of Appellant's pending petition for certiorari before the United States Supreme Court, No. 25-465.

On October 18, 2022, the district court appointed a receiver over Barton and various entities. This Court subsequently heard appeals from

the receivership order and, on April 17, 2025, affirmed the receivership. SEC v. Barton, 135 F.4th 206 (5th Cir. 2025). The district court entered a third receivership order ROA. 18978-19005. which is appealed and now before the court No. 25-10871.

**B. The Wall Entities Filed Bankruptcy Before the Receivership**

**Critically,** the nine Wall LLC entities filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Texas ***before*** the SEC filed its civil complaint and before the district court appointed a receiver. The lead case, In re Wall007, LLC, Case No. 22-41049, was filed on August 19, 2022—more than one month before the SEC initiated its civil enforcement action on September 23, 2022. ROA. 80-108.

The bankruptcy cases were jointly administered under Case No. 22-41049. The jointly administered cases include: (1) In re Wall007, LLC, Case No. 22-41049; (2) In re Wall009, LLC, Case No. 22-41113; (3) In re Wall010, LLC, Case No. 22-41125; (4) In re Wall011, LLC, Case No. 22-41114; (5) In re Wall012, LLC, Case No. 22-41125; (6) In re Wall016, LLC, Case No. 22-41136; (7) In re Wall017, LLC, Case No. 22-41137; (8) In re

Wall018, LLC, Case No. 22-41176; (9) In re Wall019, LLC, Case No. 22-41177; and (10) In re Seagoville Farms, LLC, Case No. 22-41181.

From the moment of bankruptcy filing, these entities became debtors-in-possession under 11 U.S.C. § 1107, their assets became property of the bankruptcy estate under 11 U.S.C. § 541, and the automatic stay of 11 U.S.C. § 362(a) went into effect, prohibiting any action to obtain possession of estate property or exercise control over estate property.

**C. The Receivership Order and Litigation Stay**

Despite the pending bankruptcy cases, the district court on October 18, 2022, entered a receivership order that purported to encompass the Wall entities—entities that were already under the exclusive jurisdiction of the bankruptcy court. The receivership order imposed a sweeping litigation stay, providing that "[a]ll civil legal proceedings of any nature, including . . . bankruptcy proceedings, . . . involving . . . any of the Receivership Entities" were stayed pending further order of the court. ROA.14830-31.

This stay had the effect of freezing the bankruptcy cases in place. The bankruptcy court could not proceed with administration of the bankruptcy estates, creditors could not pursue their claims, and the debtors could not move forward with reorganization efforts. The stay has remained in effect for over three years.

**D. The U.S. Trustee's Motion and Three Years of Continuances**

On October 13, 2022—just five days before the receivership order was entered—the United States Trustee filed a Motion to Convert or Dismiss With Prejudice Pursuant to 11 U.S.C. § 1112(b) in the bankruptcy court. In re WALL007, LLC, No. 22-41049 (Bankr. E.D. Tex. Oct. 13, 2022), ECF No. 33. The motion sought dismissal of the bankruptcy cases or, in the alternative, conversion to Chapter 7 or appointment of a Chapter 11 trustee.

The U.S. Trustee's motion has been pending for over three years without substantive adjudication. The bankruptcy court docket reveals a continuous pattern of status hearing continuances:

- October 14, 2022: Expedited hearing granted, set for October 20, 2022

- October 20, 2022: Continued to November 29, 2022
- November 30, 2022: Continued to February 7, 2023
- February 7, 2023: Continued to May 16, 2023
- May 16, 2023: Continued to August 22, 2023
- August 22, 2023: Continued to December 12, 2023
- December 14, 2023: Continued to April 30, 2024
- April 30, 2024: Continued to August 20, 2024
- August 20, 2024: Continued to January 21, 2025
- January 21, 2025: Continued to June 24, 2025
- June 24, 2025: Continued to September 25, 2025

This three-year pattern of continuances demonstrates that the U.S. Trustee's motion has never been adjudicated on its merits—and that the bankruptcy court has found no urgency in resolving it.

**E. The Receiver's Motion to Lift Stay**

On an June 20, 2025, the receiver filed a motion in the district court seeking to lift the litigation stay "for the limited purpose of allowing the bankruptcy court to consider" the U.S. Trustee's motion to dismiss. ROA.18969-73. The receiver sought authorization to "take all steps necessary to effectuate the dismissal of the Bankruptcy Cases." Id.

The receiver's motion did not explain why dismissal of the bankruptcy cases was necessary after three years of inaction. It did not address the rights of creditors in those bankruptcy cases. It did not acknowledge that the creditors' claims remained unsatisfied. And it did not demonstrate any harm that would result from maintaining the status quo.

**F. The District Court's July 28, 2025 Order**

On July 28, 2025, the district court granted the receiver's motion. ROA.19227-28. The order lifted the stay of the ten jointly administered bankruptcy cases "for the limited purpose of allowing the bankruptcy court to consider" the U.S. Trustee's three-year-old motion to dismiss. *Id.* The order further authorized the receiver to "take all steps that he deems

appropriate and necessary to effectuate the dismissal of the Bankruptcy Cases." *Id.*

Appellant timely appealed on September 9, 2025. ROA.19373-74.

## SUMMARY OF THE ARGUMENT

The district court's order should be reversed for four independent reasons.

The threshold question is jurisdictional and dispositive. The bankruptcy court acquired exclusive jurisdiction over the Wall entities when they filed bankruptcy in August 2022—before the SEC filed suit and before the receivership was established. That exclusive jurisdiction, vested by 28 U.S.C. § 1334(e), cannot be divested by a district court order. The district court's July 28, 2025, order, which directs the receiver to effectuate dismissal of the bankruptcy cases, exceeds the district court's authority and must be vacated.

**First,** the district court lacked authority to lift the stay because the bankruptcy court has exclusive jurisdiction over the bankruptcy estates and their property under 28 U.S.C. § 1334(e). The Wall entities filed bankruptcy before the SEC filed its civil complaint and before the district court appointed a receiver. From the moment of filing, the bankruptcy court acquired exclusive jurisdiction over the estates. A district court receivership cannot supersede bankruptcy jurisdiction, and the district court cannot accomplish indirectly through a "stay lift" what it could not

do directly—namely, take control of bankruptcy estate property. See SEC v. Byers, 609 F.3d 87, 92 (2d Cir. 2010) ("Bankruptcy jurisdiction is exclusive; a receivership cannot supersede it").

**Second,** lifting the stay serves no legitimate purpose and causes irreparable harm. There is no legal requirement that the bankruptcy cases be dismissed. The creditors in those cases remain unpaid and their claims remain unsatisfied. The debtors and creditors are entitled to their statutory rights under the Bankruptcy Code, including the right to seek relief when the receivership concludes. Maintaining the stay causes no harm to any party—the cases have been stayed for three years without incident. The only purpose served by lifting the stay is to enable the receiver to extinguish the bankruptcy protections Congress created for distressed debtors and creditors.

**Third,** the receiver's motion was motivated by self-interest rather than any legitimate receivership purpose. The receiver has already collected over $3 million in fees from the receivership estates. The motion to lift the stay is an attempt to generate additional work—and additional fees—where no work is required. The receiver has a structural conflict of interest: it benefits financially from expanding the scope of its activities,

yet it is the primary advocate for those activities. This Court has long recognized that such conflicts require close scrutiny. See Netsphere, Inc. v. Baron, 703 F.3d 296, 313 (5th Cir. 2012).

**Fourth,** the order violates due process by extinguishing creditors' and debtors' vested rights without meaningful opportunity to be heard. Creditors in the bankruptcy cases have vested rights under the Bankruptcy Code, including priority rights under 11 U.S.C. § 507, the protection of the automatic stay under § 362(a), and participation rights in the Chapter 11 process. The order eliminates these protections without any adjudication of whether dismissal is warranted under 11 U.S.C. § 1112(b) and without affording creditors a meaningful opportunity to contest dismissal. This violates the fundamental requirements of procedural due process.

# ARGUMENT

## I. THE DISTRICT COURT LACKED AUTHORITY TO LIFT THE STAY BECAUSE THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION

The jurisdictional analysis is straightforward: (1) The Wall entities filed bankruptcy before the SEC filed suit. (2) Bankruptcy filing vested exclusive jurisdiction in the bankruptcy court under § 1334(e). (3) No subsequent order can divest the bankruptcy court of exclusive jurisdiction. (4) The district court therefore lacked authority to direct dismissal of the bankruptcy cases. (5) Orders entered without jurisdiction are void ab initio.

### A. 28 U.S.C. § 1334(e) Vests Exclusive Jurisdiction in the Bankruptcy Court

Title 28 U.S.C. § 1334(e)(1) provides in relevant part:

> *"The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."*

The statute uses the word "exclusive." This is not concurrent jurisdiction, not shared authority, not coordinate jurisdiction—it is

exclusive jurisdiction vested in the bankruptcy court. The word "exclusive" means what it says: only the bankruptcy court has jurisdiction over property of the bankruptcy estate. No other court may exercise jurisdiction over that property. Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998) ("If a court lacks subject-matter jurisdiction, its judgment is void").

This exclusive jurisdiction serves critical purposes. It ensures that all creditors are treated according to the Bankruptcy Code's priority scheme. It prevents races to the courthouse. It provides for orderly administration of estates under uniform federal law. It protects debtors' rights to reorganization. When a district court purports to exercise authority over bankruptcy estate property through a receivership, it undermines all of these purposes.

The Second Circuit has squarely addressed the conflict between receiverships and bankruptcy jurisdiction. In SEC v. Byers, 609 F.3d 87 (2d Cir. 2010), the court held unequivocally: "Bankruptcy jurisdiction is exclusive; a receivership cannot supersede it." Id. at 92. The court explained that once a bankruptcy petition is filed, "the bankruptcy court's jurisdiction is exclusive, and supersedes the receivership." Id.

Similarly, in In re MCorp Financial, Inc., 137 B.R. 219 (Bankr. S.D. Tex. 1992), the bankruptcy court held: "Section 1334(e) vests exclusive jurisdiction over estate property in the bankruptcy court, and this exclusivity may not be circumvented." *Id.* at 235.

**B. The Wall Entities Were in Bankruptcy Before the SEC Filed Suit**

The chronology is dispositive. The Wall entities filed bankruptcy on August 19, 2022. The SEC filed its civil complaint on September 23, 2022—*more than one month later*. The district court appointed a receiver on October 18, 2022—*two months after the bankruptcy filing*. By the time the SEC and the district court acted, the bankruptcy court had already acquired exclusive jurisdiction over the Wall entities and their assets.

From the moment of bankruptcy filing, the Wall entities became debtors-in-possession under 11 U.S.C. § 1107. Their assets became property of the estate under 11 U.S.C. § 541. The automatic stay of 11 U.S.C. § 362(a) prohibited any act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The district court's receivership order—entered two months after the bankruptcy filing—purported to encompass the Wall entities and their property. But the district court had no authority to do so. The bankruptcy court's exclusive jurisdiction under § 1334(e) had already attached. The receivership order, to the extent it purported to reach the Wall entities, was entered without jurisdiction and is void ab initio. Steel Co., 523 U.S. at 94. Subject-matter jurisdiction defects of this nature cannot be cured or waived by operation of mandate, law-of-the-case principles, or any prior appellate determination that did not squarely address the bankruptcy court's exclusive jurisdiction under § 1334(e). Harmless-error analysis is categorically inapplicable to jurisdictional defects; a court without jurisdiction lacks power to act regardless of whether its substantive conclusions might otherwise be correct.

**C. A Receivership Cannot Supersede Bankruptcy Jurisdiction**

The SEC may argue that the district court implicitly acquired jurisdiction over the bankruptcy estates by proceeding with the receivership, or that lifting the stay simply allows the bankruptcy cases to proceed. Both arguments fail. Assumption of jurisdiction is not adjudication of jurisdiction. A court cannot expand its own subject-matter

jurisdiction through procedural orders or by proceeding as if jurisdiction existed. The exclusive jurisdiction of the bankruptcy court under § 1334(e) exists by operation of statute, not by grace of the district court.

The district court could not acquire jurisdiction over the bankruptcy estates by staying the bankruptcy proceedings. A court cannot expand its own jurisdiction through procedural orders. The exclusive jurisdiction of the bankruptcy court under § 1334(e) exists by operation of statute, not by grace of the district court. The district court's stay may have prevented the bankruptcy court from taking action, but it did not transfer jurisdiction from the bankruptcy court to the district court.

Now the district court seeks to lift the stay—but not to allow the bankruptcy court to exercise its exclusive jurisdiction over the estates. Instead, the district court has authorized the receiver to "take all steps necessary to effectuate the dismissal" of the bankruptcy cases. ROA.19227-28. This is not a neutral return of jurisdiction to the bankruptcy court. It is a directed outcome—the district court has predetermined that the bankruptcy cases should be dismissed.

This approach violates § 1334(e) in two ways. First, it assumes the district court has authority to direct outcomes in bankruptcy cases over which the bankruptcy court has exclusive jurisdiction. Second, it attempts to accomplish through the receiver what the district court cannot do directly—namely, eliminate the bankruptcy estates and bring their property under the receiver's control.

As the Fifth Circuit recognized in Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012), a district court exceeds its authority when it uses a receivership to extend its reach beyond the proper boundaries of its jurisdiction. *Id.* at *311*. Here, the proper boundary is marked by § 1334(e): the bankruptcy court has exclusive jurisdiction over the bankruptcy estates, and the district court cannot use its receivership to supersede that jurisdiction.

The order should be reversed, and the bankruptcy cases should be left to proceed under the exclusive jurisdiction of the bankruptcy court—not under the direction of a receiver operating at the behest of the district court.

## II. LIFTING THE STAY SERVES NO LEGITIMATE PURPOSE AND CAUSES IRREPARABLE HARM

### A. There Is No Requirement That the Bankruptcy Cases Be Dismissed

The receiver's motion and the district court's order proceed from a flawed premise: that the bankruptcy cases must be dismissed. There is no such requirement.

The bankruptcy cases were filed in August 2022. They have been stayed for over three years. During that time, no party has demonstrated that dismissal is necessary, that dismissal would benefit creditors, or that dismissal would serve any purpose under the Bankruptcy Code.

The U.S. Trustee's motion to dismiss has been pending for over three years without substantive adjudication. The bankruptcy court has continued the matter repeatedly—from October 2022 through September 2025—without finding any urgency in resolving it. If the bankruptcy cases posed some imminent threat to creditors or to the administration of justice, the bankruptcy court would have acted. Its three years of inaction demonstrate the opposite: there is no pressing need to dismiss these cases.

Under 11 U.S.C. § 1112(b), a bankruptcy case may be dismissed or converted "for cause." The statute sets forth a non-exclusive list of factors constituting cause, including substantial or continuing loss to the estate, failure to file required documents, and failure to maintain appropriate insurance. 11 U.S.C. § 1112(b)(4). None of these factors has been adjudicated by the bankruptcy court. The U.S. Trustee's motion remains unresolved on the merits.

The district court's order short-circuits this process. Rather than allowing the bankruptcy court to determine whether cause exists for dismissal, the order authorizes the receiver to "take all steps necessary to effectuate the dismissal." ROA.19227-28. This presumes the outcome before the adjudication. It treats dismissal as a foregone conclusion rather than a determination to be made by the bankruptcy court under § 1112(b).

There is simply no legal requirement that these bankruptcy cases be dismissed. The proper course is to maintain the status quo—keeping the cases stayed—until the receivership concludes and the bankruptcy court can determine, in the exercise of its exclusive jurisdiction, whether dismissal is warranted.

**B. Creditors Remain Unpaid and Their Claims Unsatisfied**

The bankruptcy cases exist because the Wall entities have creditors—creditors whose claims remain unsatisfied.

When a debtor files for Chapter 11 bankruptcy, creditors acquire defined rights under the Bankruptcy Code. They have the right to file proofs of claim. They have the right to participate in creditors' committees. They have the right to vote on plans of reorganization. They have priority rights under 11 U.S.C. § 507. They have the protection of the automatic stay against preferential treatment of other creditors.

None of these rights has been extinguished. The creditors in the Wall bankruptcy cases remain unpaid. Their claims remain unsatisfied. They retain their statutory rights under the Bankruptcy Code—rights that will be destroyed if the bankruptcy cases are dismissed.

The receiver's motion did not address the rights of these creditors. The district court's order did not consider whether dismissal would prejudice them. No hearing was held at which creditors could contest dismissal. The order simply authorized the receiver to pursue dismissal, without any consideration of creditor interests.

This is fundamentally unfair. Creditors who relied on the bankruptcy process—who filed proofs of claim, who monitored the cases, who expected to receive distributions under a plan or through liquidation—will have their rights extinguished without any opportunity to be heard.

**C. Debtors and Creditors Are Entitled to Relief in Bankruptcy Court When the Receivership Concludes**

The proper approach is straightforward: maintain the stay pending resolution of the receivership, and then allow the bankruptcy court to administer the estates under its exclusive jurisdiction.

The bankruptcy cases have been stayed for three years. They can remain stayed for the duration of the receivership without prejudice to any party. When the receivership concludes—whether through a favorable ruling for Appellant, through a distribution plan, or through any other resolution—the debtors and creditors can return to the bankruptcy court and exercise their statutory rights.

Under 11 U.S.C. § 1141, a confirmed plan of reorganization is binding on all parties. If the debtors can confirm plans, creditors will receive distributions according to the Code's priority scheme. Under 11

U.S.C. §§ 1106-1107, debtors-in-possession have fiduciary duties to maximize value for creditors. The bankruptcy process provides structured mechanisms for addressing creditor claims, resolving disputes, and distributing assets.

The receivership, by contrast, operates under the district court's equitable authority without the statutory protections of the Bankruptcy Code. Creditors in the receivership have no defined priority rights. They have no statutory right to participate in claims administration. They are subject to whatever process the receiver and the district court choose to implement.

Dismissing the bankruptcy cases forces creditors out of the structured bankruptcy process and into the less protective receivership process. There is no justification for this result—particularly when maintaining the stay would preserve all options and prejudice no one.

**D. The Stay Causes No Harm to Any Party**

The receiver's motion did not identify any harm caused by the litigation stay. The district court's order did not find any harm. And indeed, there is none.

The bankruptcy cases have been stayed for over three years. During that time:

- No party has been prejudiced by the stay.
- No creditor has been denied a distribution it would otherwise have received.
- No asset has been dissipated because of the stay.
- No legal right has been impaired by the stay.

The stay simply maintains the status quo. It preserves the bankruptcy estates for future administration. It keeps all options open—for the debtors, for the creditors, and for the court. When the receivership concludes, the bankruptcy court can determine the appropriate path forward.

Lifting the stay, by contrast, causes irreparable harm. Once the bankruptcy cases are dismissed, the estates are terminated. Creditors lose their statutory rights. Debtors lose the ability to reorganize. The property of the estates is subjected to non-statutory claims administration under the receiver's sole discretion, without the procedural protections Congress mandated for bankruptcy estates.

This harm cannot be undone on appeal from final judgment. A future appellate court cannot reconstitute a dismissed bankruptcy estate, restore creditors' priority rights, or recover assets that have been distributed through the receivership. The harm is immediate and irreparable—which is precisely why the collateral order doctrine applies and why this appeal should proceed.

The balance of equities overwhelmingly favors maintaining the stay. No harm results from preservation of the status quo. Irreparable harm results from lifting the stay and dismissing the bankruptcy cases.

## III. THE RECEIVER'S MOTION WAS MOTIVATED BY SELF INTEREST, NOT LEGITIMATE RECEIVERSHIP PURPOSES

### A. The Receiver Sought to Generate Fees Where No Work Is Required

The receiver's motion to lift the stay should be viewed in context: the receiver has already collected over $3 million in fees from the receivership estates. The motion to dismiss the bankruptcy cases is an attempt to generate additional work—and additional fees—where no work is required.

The stayed bankruptcy cases require no current administration and generate no current activity. The motion to lift the stay would create additional work—preparing and filing motions, attending hearings, responding to objections, and potentially administering bankruptcy assets through a separate claims process. This structural incentive warrants scrutiny of whether the motion serves legitimate receivership purposes or primarily generates billable activity.

But if the receiver obtains authorization to "take all steps necessary to effectuate dismissal," it can bill for that work. It can bill for preparing and filing motions in the bankruptcy court. It can bill for attending hearings. It can bill for responding to creditor objections. It can bill for any appellate proceedings. And once the bankruptcy cases are dismissed, the receiver can bill for administering the bankruptcy assets through a duplicative, non-statutory claims process of its own design.

None of this work is necessary. The bankruptcy cases can remain stayed at no cost to anyone. But from the receiver's perspective, unnecessary work is still billable work.

This Court has recognized that receivers have financial incentives that can conflict with the interests of the estates they administer. In *Netsphere, 703 F.3d at 313*, this Court observed that "the receiver benefits financially from expanding the scope of its activities." The Court ordered that fees be reconsidered in light of its holding that the receivership was improper. Id.

The same analysis applies here. The receiver's motion to lift the stay was not motivated by any legitimate receivership purpose. It was motivated by the receiver's financial interest in generating additional work.

**B. The Receiver Has a Structural Conflict of Interest**

The receiver operates under a structural conflict of interest that requires close judicial scrutiny of its actions.

The receiver is paid from the receivership estates. The more work the receiver does, the more fees it collects. The more assets under its control, the larger its fee base. The more proceedings it initiates, the more it bills. The receiver's financial interest is directly contrary to the interest in efficient, economical administration.

This conflict is particularly acute here because the receiver is the primary advocate for dismissing the bankruptcy cases. The receiver moved to lift the stay. The receiver appeared in bankruptcy court to seek dismissal ROA. 19227-28. The receiver is the party pressing for an outcome—dismissal—that expands its control and generates additional fees.

Due process requires that decision-makers be free from financial bias. See Tumey v. Ohio, 273 U.S. 510, 523 (1927) ("it certainly violates the Fourteenth Amendment . . . to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him"). See also Gibson v. Berryhill, 411 U.S. 564, 578-79 (1973) (adjudicators with financial interest in outcome violate due process).

The receiver is not a neutral adjudicator—it is an interested party. Its recommendation to dismiss the bankruptcy cases should be evaluated with appropriate scepticism. Its financial interest in generating work and fees should be weighed against the absence of any legitimate purpose served by dismissal.

The district court did not conduct this analysis. It granted the receiver's motion without examining the receiver's financial incentives or considering whether dismissal served any purpose other than the receiver's self-interest. This was error.

## IV. THE ORDER VIOLATES DUE PROCESS BY EXTINGUISHING CREDITOR AND DEBTOR RIGHTS WITHOUT MEANINGFUL PROCESS

### A. Creditors Have Vested Rights Under the Bankruptcy Code

Creditors in the bankruptcy cases have vested rights under the Bankruptcy Code. These rights include:

**Priority Rights.** Under 11 U.S.C. § 507, certain claims are entitled to priority payment ahead of general unsecured claims. These include administrative expenses, wage claims, and tax claims. The Bankruptcy Code's priority scheme ensures that creditors are paid in a defined order.

**Automatic Stay Protection.** Under 11 U.S.C. § 362(a), creditors are protected from races to the courthouse. No single creditor can obtain a preference over others. The automatic stay ensures orderly administration for the benefit of all creditors.

**Participation Rights.** Creditors have the right to file proofs of claim, participate in creditors' committees, vote on plans of reorganization, and object to proposed actions. These participation rights ensure that creditors have a voice in the administration of the estate.

**Distribution Rights.** If a plan is confirmed or the case is converted to Chapter 7, creditors have the right to receive distributions according to the Code's distribution scheme. These rights are vested from the moment of the bankruptcy filing.

These are not abstract rights—they are concrete, vested interests that creditors can enforce. Dismissal of the bankruptcy cases extinguishes these rights. Creditors would lose their priority protections, their participation rights, and their distribution rights. They would be relegated to whatever claims process the receiver chooses to establish—a process without the statutory protections of the Bankruptcy Code.

## B. The Order Eliminates Statutory Protections Without Due Process

The due process clause of the Fifth Amendment prohibits the deprivation of property without due process of law. "The fundamental requirement of due process is the opportunity to be heard at a meaningful

time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

The district court's order eliminates creditors' vested rights without affording them any opportunity to be heard. The order was entered on the receiver's motion, without notice to the bankruptcy creditors. No hearing was held at which creditors could contest dismissal. No findings were made regarding the effect of dismissal on creditor interests.

Moreover, the order predetermines the outcome in the bankruptcy court. It does not merely lift the stay to allow the bankruptcy court to consider the U.S. Trustee's motion. It authorizes the receiver to "take all steps necessary to effectuate dismissal." ROA.19227-28. The order treats dismissal as a foregone conclusion rather than a matter for adjudication.

This denies creditors meaningful process in two ways. First, they were denied any opportunity to be heard in the district court before the order was entered. Second, the order's authorization of "all steps necessary to effectuate dismissal" prejudges the bankruptcy court proceeding, making any subsequent hearing in bankruptcy court a mere formality.

Due process requires more. Before creditors' vested rights can be extinguished, they are entitled to notice and an opportunity to be heard on whether dismissal is warranted. They are entitled to an adjudication under 11 U.S.C. § 1112(b) of whether cause exists for dismissal. They are entitled to a proceeding that is not prejudged by orders from another court.

The district court's order fails these requirements. It should be reversed.

### C. Even if Constitutional Issues Are Not Reached, Reversal Is Required

Even if this Court declines to reach the due process claims, the absence of subject-matter jurisdiction independently compels vacatur. The jurisdictional defect identified in Section I is not waivable, is not cured by the passage of time, and is not insulated by any prior mandate or law-of-the-case doctrine. A judgment entered without jurisdiction is void regardless of its other merits.

## V. THE PROPER REMEDY IS TO MAINTAIN THE STATUS QUO PENDING RESOLUTION OF THE RECEIVERSHIP

The proper remedy is straightforward: reverse the district court's order and maintain the litigation stay pending resolution of the receivership.

This remedy serves all legitimate interests:

**For Creditors:** Maintaining the stay preserves creditors' rights under the Bankruptcy Code. When the receivership concludes, creditors can pursue their claims through the bankruptcy process, with all the statutory protections that process affords.

**For Debtors:** Maintaining the stay preserves the debtors' right to reorganization under Chapter 11. The debtors may ultimately confirm plans and emerge from bankruptcy as going concerns—an option foreclosed by dismissal.

**For the Receivership:** Maintaining the stay does not prejudice the receivership. The receivership can continue to administer the non-bankruptcy assets under its control. The stayed bankruptcy cases require no attention from the receiver.

**For the Courts:** Maintaining the stay preserves orderly administration. It avoids the jurisdictional conflict between the district court's receivership and the bankruptcy court's exclusive jurisdiction under § 1334(e). It allows each court to exercise its proper authority in its proper sphere.

The only party that does not benefit from maintaining the stay is the receiver—and the receiver's interest is in generating fees, not in serving any legitimate receivership purpose.

This Court should reverse the district court's order and remand with instructions to maintain the litigation stay. The bankruptcy cases should remain stayed until the receivership concludes. At that point, the bankruptcy court can determine, in the exercise of its exclusive jurisdiction, whether cause exists to dismiss the cases under § 1112(b).

This approach respects the exclusive jurisdiction of the bankruptcy court. It preserves the rights of creditors and debtors. It avoids irreparable harm. And it ensures that any ultimate determination regarding the bankruptcy cases is made by the court with jurisdiction to make it—the bankruptcy court.

## CONCLUSION & RELIEF

For the foregoing reasons, Appellant Timothy Barton respectfully requests that this Court:

1. VACATE the district court's July 28, 2025 order in its entirety;

2. REMAND with instructions that the bankruptcy cases remain stayed pending resolution of the receivership, with the bankruptcy court retaining exclusive jurisdiction under 28 U.S.C. § 1334(e) to determine all matters concerning those estates.

3. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 13, 2026

*/s/ Timothy L. Barton*

**Timothy L. Barton**
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2026, I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users.

I further certify that I caused a copy of the foregoing to be served on the following counsel for Appellee Securities and Exchange Commission via email and U.S. mail:

Ezekiel L. Hill
Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
hillez@sec.gov

*/s/ Timothy L. Barton*
**Timothy L. Barton**

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 5,832 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*<u>/s/ Timothy L. Barton</u>*
**Timothy L. Barton**