UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 F STREET, N.E.
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

EZEKIEL L. HILL
(202) 551-7724
HILLEZ@SEC.GOV

March 31, 2026

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

*Via ECF*

Re: *SEC v. Barton*, No. 25-11043

Dear Mr. Cayce,

Pursuant to Federal Rule of Appellate Procedure 28(j), I write on behalf of appellee Securities and Exchange Commission regarding two recent decisions.

First, in *SEC v. Barton*, No. 24-10788, 2026 WL 821413 (5th Cir. Mar. 25, 2026) (attached), this Court held that it lacked jurisdiction over Timothy Barton's interlocutory appeals from "non-sale administrative orders related to the receivership." *Id.* at *3-4. This Court similarly lacks jurisdiction over Barton's interlocutory appeal from the district court's order lifting its stay of bankruptcy cases filed by receivership entities. *See* SEC Br. 12-17; *see also* *Barton*, 2026 WL 821413, at *6 n.8 (explaining that "[Barton's] [f]urther appeals from . . . non-sale administrative orders will be viewed with skepticism and will incur sanctions if deemed frivolous").

Second, on March 30, 2026, the Supreme Court denied Barton's petition for certiorari that sought review of the underlying receivership order. *Barton v. SEC*, No. 25-465 (U.S. Sup. Ct. Mar. 30, 2026); *see* SEC Br. 4.

Sincerely,

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

cc: Timothy Barton (via ECF)

2026 WL 821413
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

SECURITIES AND EXCHANGE COMMISSION, Plaintiff—Appellee,
v.
Timothy BARTON, Defendant—Appellant.

No. 24-10788
|
FILED March 25, 2026

**Synopsis**
**Background:** Securities and Exchange Commission (SEC) filed enforcement action against real estate developer and other corporate entities that he formed, claiming violations of Securities Exchange Act and Securities Act and seeking disgorgement of ill-gotten gains and civil penalties based on their fraudulent scheme in which $23.7 million of investors' funds were commingled and misused. The United States District Court for the Northern District of Texas, Brantley David Starr, J., appointed receiver over entities that held property purchased with or that otherwise benefited from fraudulent activities and, subsequently, in overseeing receivership, approved two property sales and ratified two settlement agreements related to properties of receivership estate. Developer appealed.

**Holdings:** The Court of Appeals, Stewart, Circuit Judge, held that:

appellate jurisdiction was lacking over order approving one property sale;

appellate jurisdiction was lacking over orders ratifying settlement agreements;

appellate jurisdiction could be exercised over order approving second property sale; and

approval of sale in best interest of receivership estate was not abuse of discretion.

Dismissed in part and affirmed in part.

**Procedural Posture(s):** Interlocutory Appeal; Other.

Appeal from the United States District Court for the Northern District of Texas, USDC No. 3:22-CV-2118, Brantley David Starr, U.S. District Judge

**Attorneys and Law Firms**

Keefe Michael Bernstein, Trial Attorney, U.S. Securities & Exchange Commission Trial Unit, Fort Worth, TX, Ezekiel Levenson Hill, Securities and Exchange Commission Office of General Counsel, Washington, DC, for Plaintiff—Appellee.

Timothy Barton, Carrollton, TX, Pro Se.

Craig Alan Carrillo, Brown Fox, P.L.L.C., Dallas, TX, for Amicus Curiae Cortney C. Thomas.

Before Davis, Jones, and Stewart, Circuit Judges.

**Opinion**

Carl E. Stewart, Circuit Judge:

***1** After the Securities and Exchange Commission (SEC) filed a complaint against Timothy Barton for alleged violations of the Exchange Act and the Securities Act, the district court appointed a receiver, who has since acted to manage properties that are allegedly connected to the basis for Barton's statutory violations. In overseeing the receivership, the district court has entered a number of orders approving sales and settlement agreements related to properties of the receivership estate. In this appeal, Barton challenges the district court's approval of two sales of property and ratification of two settlement agreements. For the following reasons, we partially DISMISS the appeal for lack of jurisdiction and otherwise AFFIRM the judgment of the district court.

## I

In September 2022, the SEC filed a complaint against Barton, entities formed by Barton, and several codefendants, alleging violations of the Exchange Act and the Securities Act. Thereafter, it moved to appoint a receiver over entities directly or indirectly controlled by Barton. The district court granted the motion and appointed a receiver. Barton appealed the appointment, and this court ultimately vacated the receivership and remanded for the district court to "consider whether to appoint a new receivership under the

*Netsphere* factors."[1] *SEC v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023) ("*Barton I*").

On remand, the district court appointed a new receivership, which was specifically limited to entities that " 'received or benefitted from' assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." In its order, the district court listed the qualifying entities.[2] Entities that held "property purchased with, or that otherwise benefitted from" the fraudulent activities brought those entities within the bounds of the receivership. This included, *inter alia*: TC Hall, LLC (the "Hall Street property"), and Goldmark Hospitality LLC, which it observed was the "record owner of a 70-unit extended-stay hotel in Dallas, Texas," called "Amerigold Suites." Entities that "purchased property, in whole or in part" with the fraudulently-gotten funds that had "since been sold" were also within the bounds of the receivership. This included, *inter alia*, BM318, LLC ("BM318"). Entities that received the fraudulently-obtained funds, including JMJ Development, LLC ("JMJ"), were also included. Barton appealed the new receivership, and it was upheld by this court on appeal. *SEC v. Barton*, 135 F.4th 206, 220 (5th Cir. 2025) ("*Barton II*") (holding that the district court "did not abuse its discretion in imposing the receivership").

***2** In the meantime, the district court continued monitoring the receivership. There are four district court orders on appeal here: (1) an approval of a sale for the Amerigold Suites, owned by Goldmark Hospitality; (2) an approval of a settlement between JMJ, Tamamoi, and a 3820 East Illinois Avenue property in Dallas, Texas ("3820 Illinois Ave."), concerning a $500,000 loan to JMJ on which JMJ had defaulted; (3) ratification of a settlement agreement between BM318, and The Dixon Water Foundation ("Dixon") and Lumar Land & Cattle, LLC ("Lumar"), entered into before a bankruptcy court to settle BM318's bankruptcy claims; and (4) the sale of the Hall Street property, which proceeded to its conclusion.

On appeal, Barton argues that the district court erred by failing to appoint appraisers and conduct a hearing under 28 U.S.C. § 2001 before approving the challenged transactions, in authorizing the receiver to permanently sell property prior to entry of a final judgment, and in determining the transactions were in the best interest in the estate.

## II

We begin, as always, with jurisdiction. The SEC argues that we do not have jurisdiction over the Amerigold Suites sale order because the sale was cancelled and issues regarding that sale are thus moot. It also argues that we do not have jurisdiction over the two settlement orders because Barton's arguments are "foreclosed by *Barton II*" and "the stringent limitations" of the collateral order doctrine. As the appellant, Barton "bear[s] the burden of establishing our appellate jurisdiction." *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010) (citing *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 289 (5th Cir. 2000)).

### A

One of the entities that held property purchased by the fraudulently-obtained funds was Goldmark Hospitality, which purchased Amerigold Suites. On July 25, 2024, after a hearing on the matter, the district court approved the sale of Amerigold Suites for the third time, finding that the sale was in the best interest of the estate.[3] However, the receiver subsequently notified the court that the purchaser backed out of the sale agreement. The purchaser stated that it had been contacted by Barton, who "advised he would soon resume possession and control over the property and the [r]eceiver would not be able to close on the approved sale." The purchaser was "deeply concerned" about being sued by Barton after the sale closed.

The SEC argues that we lack appellate jurisdiction as to the district court's approval of the Amerigold Suites sale because the sale will not close and we cannot grant effectual relief. In his reply, Barton states that he "does not oppose dismissal of the Amerigold appeal as moot." We agree that the appeal of the district court's approval of the Amerigold Suites sale is moot.

However, also in his reply, Barton asks us to "vacate the approval order to prevent collateral consequences or reliance on an unreviewed authorization." Barton does not provide us with any alleged collateral consequence that would flow from the district court's specific approval of sale, which will not be completed. Thus, he has failed to meet his burden of establishing our appellate jurisdiction over the district court's approval of the Amerigold Suites sale. *See Martin*, 618 F.3d at 481.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

### B

#### 1

***3** Next, we consider whether we have jurisdiction over the court's ratification of two settlement agreements concerning properties of the receivership estate. The first is the settlement entered by the receiver through its property JMJ, with Tamamoi, LLC, and 3820 Illinois. The underlying dispute concerned a $500,000 loan from Tamamoi to JMJ, which was secured by "land and improvements and fixtures" at 3820 Illinois. JMJ ultimately defaulted on the note and Tamamoi foreclosed on 3820 Illinois. JMJ sued Tamamoi and 3820 Illinois in state court and "filed a notice of lis pendens that clouded the title." That state litigation was stayed when a receiver was appointed in this matter. After discussing settlement with Tamamoi and 3820 Illinois, the receiver "determined the litigation was unlikely to succeed and would be costly," and ultimately mediated before Bankruptcy Judge Hale. Pursuant to the settlement agreement, the parties agreed that JMJ would be paid $75,000 to settle the state court claims "and each side would release all existing claims related to the property." The parties "agreed to bring the settlement to [the district court] for approval." The district court approved the settlement agreement. [4]

The second is the settlement agreement entered into by the receiver through BM318 with Dixon and Lumar. BM318 had previously "asserted claims in a bankruptcy proceeding" against Dixon and Lumar. The three parties settled the claims and the bankruptcy court held an evidentiary hearing regarding the settlement. Barton appeared at the hearing through counsel. Ultimately, "[t]he bankruptcy court made findings of fact and conclusions of law on the record and approved the settlement as in the best interest of the bankruptcy estate. Barton did not appeal that ruling." Despite Barton's lack of timely appeal, in reviewing the motion to approve the settlement, the district court reviewed the factual findings and legal conclusions of the bankruptcy court, found no error, and adopted them as its own. It then concluded that the settlement was in the best interest of the estate because the receiver "conducted sufficient due diligence to reach the settlements" and evidence that the claims had significantly more value than the settlement amount were not credible.

#### 2

The SEC argues that *Barton II* squarely decides this issue by holding that this court did not have jurisdiction over the district court's ratification of the settlement agreements, which are non-sale administrative orders related to the receivership. It argues that the law of the case doctrine applies. *See United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) ("Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.").

In *Barton II*, the panel explained the law concerning the bounds of our jurisdiction over interlocutory appeals of district court orders issued in monitoring a receivership. Under the text of 28 U.S.C. § 1292(a)(2), and *Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015), interlocutory appeals are permitted "only for 'orders appointing receivers' or orders 'refusing ... to take steps to accomplish the purposes of [winding up receiverships].' " *Barton II*, 135 F.4th at 223 (alteration in original) (quoting *Netsphere, Inc.*, 799 F.3d at 331–34). In addition to that statutory authority, "the collateral-order doctrine does grant us jurisdiction to review ... *sales* orders" because of the finality of those orders. *Id.* at 224–25. The *Barton II* panel then reviewed the six orders before it and concluded that although there was jurisdiction over the sales orders, there was no appellate jurisdiction to "review the orders refusing the use of receivership funds for defense costs and blessing certain actions of the earlier (vacated) receivership," which included the district court's "ratified orders that approved the receiver's settlement of claims (none of which were sale orders)." *Id.* at 225.

***4** Barton, for his part, tries to distinguish the issue here from that in *Barton II.* He argues that "*Barton II* did not categorically bar review of approvals that clear title by extinguishing claims and releasing lis pendens for consideration—i.e. functional dispositions.... Law-of-the case yields to materially different facts and to prevent manifest injustice."

But Barton fails to meet his burden of showing that we have appellate jurisdiction. *See Martin*, 618 F.3d at 481. An earlier panel of this court held in a published, precedential opinion that we do not have jurisdiction over a district court's ratification of a settlement agreement. *See Barton II*, 135 F.4th at 214. Although Barton implies that there are factual

distinctions between the settlements in that appeal and those in this appeal, he does not point us to those distinctions. The first settlement between JMJ, Tamamoi, and 3820 Illinois, settles a state court claim made by JMJ—it does not directly dispose of property. And the second settlement between BM318, Dixon, and Lumar concerns a bankruptcy claim held by BM318—it does not directly dispose of property, either.

Therefore, we conclude that we lack appellate jurisdiction to review the district court's approval of the Amerigold Suites sale, and of the district court's approval and ratification of the two settlement orders.

### III

Based on those conclusions, the only remaining order challenged in this appeal is the district court's approval of the sale of the Hall Street property, which proceeded to its conclusion. The Hall Street property is an unimproved property in Dallas, Texas, which the receiver requested approval to sell for the price of $6 million. The district court appointed appraisers, accepted the appraisals, held a hearing on the motion for approval, and ultimately approved the sale.

#### A

We are satisfied that we have appellate jurisdiction over the order approving the sale, pursuant to *Barton II* and our other precedent. *See Barton II*, 135 F.4th at 224 ("Even though [28 U.S.C.] § 1292(a)(2) does not grant us jurisdiction for the *administrative* orders in this case, the collateral-order doctrine does grant us jurisdiction to review the *sales* orders."); *see also SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330–31 (5th Cir. 2001).

#### B

On appeal, Barton argues that the district court erred by authorizing the receiver to permanently sell property prior to entry of a final judgment, and by determining the sales were in the best interest in the estate. [5]

##### 1

Barton argues that the district court erred by approving the sale of the Hall Street property before a final judgment of liability was entered. According to Barton, the issue in this case is not whether the district court could approve the sale but whether it "*should have* authorized sales in these particular circumstances." He thus argues that the district court should not have approved the sale because there were no exigent circumstances. Although there is no law to support that proposition, he asks us to create a new rule "that receivers should conserve real property in place, as it is, pending final judgment unless there are exigent circumstances that make that 'less drastic measure' not available."

***5** To the extent that Barton argues that the true issue in this case is whether the district court "*should have*" approved the sale, those arguments are captured by the requirement that a district court determine whether the sale is in the best interest of the estate. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *see also infra* III.B.2. Additionally, Barton quotes language regarding "less drastic measures" out of context from this court's ruling in *Netsphere.* The quoted passage reads in full as follows:

> Receivership is "an extraordinary remedy that should be employed with the utmost caution" and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties.

*Netsphere*, 703 F.3d at 305. This court in *Netsphere* explained that receiverships are to be used when "less drastic equitable remedies are inadequate." *Id.* This explanation did not speak to the limits on a receiver when in place, and there is no challenge on this appeal to the appointment of the receiver. Therefore, this argument is unavailing. [6]

##### 2

Barton also argues that the approval of the Hall Street property sale was not in the best interest of the estate. "Once assets have been placed in receivership, '[i]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.' " *Stanford Int'l Bank, Ltd.*, 927 F.3d at 840 (alteration in original) (quoting *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982)). A district court's orders in "supervising an equity receivership[ ] [are] reviewed for

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

abuse of discretion." *Id.* at 839 (citing *Safety Fin. Serv., Inc.*, 674 F.2d at 373; *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008)). "There is no abuse of discretion where factual findings are not clearly erroneous and rulings are without legal error." *Id.* (citing *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 377 (5th Cir. 2008)).

As to the Hall Street property, Barton argues that the district court's written order did not contain reasoning but simply referred to the oral ruling at the sale hearing, which "simply noted the proposed sale prices met the statutory threshold set by the obtained appraisals, the absence of other public bids for the properties, and the presence of debt service and (for one of the properties) maintenance costs." He argues that the district court "did not address the failure of the [r]eceiver to market [the Hall Street] property to hotel developers, especially given its location ... and the zoning approvals obtained for that purpose."[7]

***6** In response, the SEC points out it is undisputed that the district court held the sale price to satisfy the requirements of 28 U.S.C. § 2001, that is, the sale price was at least two-thirds of the appraised value. Although Barton had speculated about "potential interest in the Hall Street property," he did not provide any evidence to support that speculation. The receiver had published a request for offers in *The Dallas Morning News* and Barton did not identify any deficiencies in that published notice. The district court also observed that the sale of the Hall Street property benefitted the estate by allowing for an earlier sale to avoid the continued accrual of interest.

After considering the parties' arguments and pertinent portions of the record, we cannot say the district court abused its discretion in approving the sale. At the approval hearing, the receiver pointed out that the receivership estate's properties "continue to accrue interest at a very high rate" and that the Hall Street property accrues approximately $1,023 of interest per day. The receiver explained the sale offer received for the Hall Street property was higher than a previous sale price offered by that buyer to Barton, and would result in a net recovery of approximately $900,000. Barton confirmed that he had not received any higher offer for sale of the Hall Street property. Considering that testimony, the district court observed the unique nature of this real estate-based receivership in this matter, the necessary upkeep on the properties and the interest accrual, and concluded that a sooner sale would benefit the receivership estate. The district court did not abuse its discretion in so concluding. *See Stanford Int'l Bank, Ltd.*, 927 F.3d at 840.

## IV

For the foregoing reasons, we DISMISS for lack of jurisdiction Barton's appeal of the orders approving sale of Amerigold Suites, the order approving the settlement between JMJ Development, Tamamoi, LLC, and 3820 Illinois, and the order approving the settlement between BM318, Dixon, and Lumar. Given our determination that we have jurisdiction over the district court's approval of sale for the Hall Street property, we AFFIRM the district court's approval of that sale.[8]

**All Citations**

--- F.4th ----, 2026 WL 821413

## Footnotes

1 *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).

2 Those entities include: WALL007, LLC; WALL009, LLC; WALL010, LLC; WALL011, LLC; WALL012, LLC; WALL016, LLC; WALL017, LLC; WALL018, LLC; WALL019, LLC; Carnegie Development, LLC; Orchard Farms Village, LLC; BM318, LLC; Northstar PM, LLC (Texas); Lynco Ventures, LLC; DJD Land Partners, LLC; LDG001, LLC; Seagoville Farms, LLC; Ridgeview Addition, LLC (Texas).

3 The district court has twice before approved sales of Amerigold Suites: once during the first now-vacated receivership, and again under the current receivership prior to our decision in *Barton II*. In *Barton II*, this court held that the district court did not abuse its discretion in approving the second proposed Amerigold Suites

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

sale. *SEC v. Barton*, 135 F.4th 206, 225 (5th Cir. 2025) (“*Barton II*”). However, the sale did not ultimately close because of the pending appeal and the “continued uncertainty surrounding the transaction.”

4 In so doing, the district court emphasized that the receivership was low on cash in large part because it was unable to close deals on the receivership estate's properties, noting that limitation “stems from Barton's appeal of every order and his personal contacting of prospective buyers (in violation of the [c]ourt's order) to scare them from closing for fear he will sue them too.”

5 Barton's principal brief also raises a third merits challenge that that the district court erred by failing to appoint appraisers and conduct a hearing under 28 U.S.C. § 2001 before approving the challenged transactions. However, he does not make that challenge as to the sale of the Hall Street property because the district court did appoint appraisers, approved appraisals, and set a hearing regarding the sale.

6 Barton also cites to out-of-circuit case law for the proposition that “receiverships should conserve assets in place and not liquidate them prior to final judgment.” However, as the SEC points out, “a receiver need not stand by while receivership estate assets deteriorate. In fact, a receiver cannot do so.” Additionally, Barton's cited cases involve courts considering liquidation as an alternative to bankruptcy. Thus, they are inapposite here.

7 On reply, Barton argues for the first time that one of the appraisers for the Hall Street property was a “broker BPO,” which does not constitute a disinterested appraiser as required by 28 U.S.C. § 2001(b). That argument was not raised in Barton's principal brief and is thus forfeited. *See Ibrahim v. Garland*, 19 F.4th 819, 825 n.5 (5th Cir. 2021) (citing *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 n.5 (5th Cir. 2020)).

8 In deciding this appeal, we have considered the receiver's amicus brief filed on behalf of the SEC. The receiver asks this court to “expedite and summarily dispose of Barton's appeal of sale orders,” deem Barton's appeals of non-sale administrative orders frivolous, and deter him from filing such appeals moving forward. Barton has filed approximately thirteen appeals in the last three years. The receiver argues that those appeals have “prevented the [r]eceiver from securing title policies” on the properties, increased accrual of interest, and that changing market conditions have lowered the sale prices. We are mindful that appeals have impacted the management of the receivership estate, significantly reduced funds potentially available to ultimate beneficiaries of the receivership, and expended court resources. Further appeals from sale orders or non-sale administrative orders will be viewed with skepticism and will incur sanctions if deemed frivolous. *See Howard v. St. Germain*, 599 F.3d 455, 458 (5th Cir. 2010) (citation modified) (“An appeal is frivolous if the result is obvious or the arguments of error are wholly without merit.”); *see also* FED. R. APP. P. 38.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.